Phoenix Jellico Coal Co. v. Grant.

CASE 91.—SUIT BY W. R. GRANT AGAINST THE PHOENIX JELLICO COAL COMPANY.—February 15, 1910.

# Phoenix Jellico Coal Co. v. Grant

Appeal from Laurel Circuit Court.

WILLIAM LEWIS, Circuit Judge.

From a decree for plaintiff, both parties appeal.—Affirmed.

1. Equity—Maxims—Clean Hands.—Plaintiff, operating mines under a lease from defendant, became indebted to defendant for a considerable sum in excess of what the mines yielded, whereupon the parties made a new contract in writing providing that plaintiff pay defendant $100 per month until the indebtedness was paid, and that if he defaulted in any payment he would turn over his lease and his property to defendant in payment. Plaintiff made default, and defendant took possession of the property and refused to allow plaintiff to operate the mine. The evidence showed that the second agreement was prepared by defendant's president, and plaintiff was uneducated and unable to understand the contract and that the president told him at the time that it must be executed to show a settlement of the amount due; that defendant had a lien on plaintiff's property to secure its payment, and that it in no way affected the former contract. The president, after obtaining the contract, showed it to prospective buyers and disposed of his stock to them. Held, that plaintiff was not a party to the fraud by which the second contract was obtained, and he was entitled to the possession of his property and a reformation of the contract so as to show that defendant had only a lien on it for the amount due, enforceable only after the expiration of the lease.

2. Mines and Minerals—Mining Lease—Disturbance of Possession of Lessee—Damages.—Where plaintiff as lessee of mines was fraudulently prevented from operating them by defendant, and it appeared that up to the time he ceased operating

he had done so at a loss, and the weight of the evidence showed that they had failed to be a paying proposition since that time, plaintiff was entitled to only nominal damages.

SAM C. HARDIN for appellant.

H. C. CLAY for appellee.

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER—Affirming.

On August 1, 1905, the appellant, Phoenix Jellico Coal Company, leased to appellee, W. R. Grant, a certain coal field lying in Laurel county, Ky., and adjoining other coal property then being worked by appellant. The lease was to run for four years and nine months. By the terms thereof appellee was to build a tip house and make such other improvements as were necessary to operate the coal mine. He further agreed to work said mine in the usual or practical way of mining. He was to pay appellant a royalty of 10 cents per ton on all coal mined. Appellant agreed to sell appellee and his employes all goods and supplies at the same price charged its own miners. It further agreed to furnish appellee a sufficient number of cars to handle the output of the mines. The lease contains other provisions which it will be unnecessary to notice. After the execution of the lease, appellee proceeded to carry out his part of the contract. By the first day of June 1906, appellee had become indebted to appellant in the sum of $2,-239.22 in excess of what the mine had yielded. Upon that date appellant and appellee entered into a new contract. This contract recited that appellee had become indebted to appellant in the sum of $2,239.22, and that he was unable to pay the same. The contract then provided that appellee was to pay appellant out

of the sale of the coal from the mine $100 per month until all the indebtedness above referred to had been paid in full.   It was further stipulated that if any one of said payments became due and unpaid, appellee would turn over and transfer his lease, mules, harness, and other property to appellant, unless such default was occasioned by a strike.   The contract also provided that in the event of his failure to make payments, he thereby sold, granted, bargained, and conveyed all of his property to appellant for the sum of $2,239.22.   In the latter event the lease of August 1, 1905, was to be null and void.   A short time after the execution of this new contract, default was made in the payment of the $100 per month above referred to, and appellant then took possession of the mine and appellee's property, and refused to permit appellee to enter the mine for the purpose of operating the same.

Charging that the contract of June 1, 1906 was obtained by fraud, appellee instituted this action against appellant for a cancellation or reformation cf the contract and for $12,500 damages for depriving him of the possession of the mine. After denying certain allegations of the petition, appellant pleaded that the contract of June 1, 1906, was obtained by fraud and that appellee himself was a party thereto, and therefore not in position to demand equitable relief at the hands of appellant.   Evidence was heard and the case submitted to the chancellor, who held that the contract of June 1, 1906, was obtained from appellee by fraud, and it should be reformed so as to express the true agreement between the parties. The court then adjudged that appellee recover of appellant possession of all the property described in

the lease and such other property as was taken from him by appellant. It was further adjudged that the contract of June 1, 1906, be reformed so as to state that appellant had only a lien on the property therein described to secure the payment of whatever amount appellee owed appellant on June 1, 1906; said lien, however not to be enforced until after the expiration of said lease. The judgment also gave appellee nominal damages only. From this judgment the Phoenix Jellico Coal Company appeals, and appellee also prosecutes a cross-appeal.

According to the testimony for appellee, the contract of June 1, 1906, was prepared by appellant's former president. Appellee is uneducated and was unable to understand the contract. When the contract was signed by him, the president stated that the writing was to be executed for the sole purpose of showing a settlement of the amount that appellee then owed appellant, and that appellant held a lien on the property of appellee to secure the payment of said amount; that the contract thus obtained was in no way to affect the former contract between appellant and appellee. The former president was then attempting to dispose of his stock in the mine. After obtaining the contract in question, the president went to Cincinnati, showed it to the prospective buyers, and disposed of his stock to them.

While the evidence took a wide range, and many matters were referred to which it will be necessary to discuss, it is manifest that the only defense relied upon by appellant is that appellee was himself a party to the fraud by which the new stockholders were induced to purchase, and that the court should require him to remain where he has placed himself by his own fraudulent act. We are unable, however, to

agree with this contention of appellant.  Appellee had no stock for sale; nor was he trying to induce others to buy.  He had no motive nor purpose in executing the contract in question, except to protect his own interest.  He claims that he himself was deceived by appellant, and was induced to sign the contract by reason of the fraudulent representations made to him.  His testimony upon this point is not controverted in any manner.  Appellant's former president was put on the stand for the purpose of testifying, but did not testify to anything tending to disprove appellee's statements.  If it had been shown that appellee was not deceived, but that he voluntarily entered into the contract in question for the purpose of assisting appellant's president in the perpetration of a fraud, another question would be presented.  Being deceived himself by appellant's president, he should not be deprived of his remedy because appellant's president also deceived others.  A careful reading of the record convinces us that appellee was not a party to the fraud alleged to have been perpetrated by appellant's president in the sale of his stock.  We therefore conclude that the judgment of the chancellor, reforming the contract of June 1, 1906, is proper.

Appellee, on cross-appeal, insists that he is entitled to a large sum by way of damages.  The evidence shows that up to the time he ceased operating the mines, the mines were operated at a loss.  Since that time the weight of the evidence is to the effect that the mines have not been a paying proposition, although there is some evidence to the contrary.  Being unable to say that the evidence upon this point does not support the finding of the chancellor, his finding will not be disturbed.

Judgment affirmed, both on the original and cross-appeal.