## Grant v. Phoenix-Jellico Coal Company.

(Decided October 29, 1913).

### Appeal from Laurel Circuit Court.

1. **Mines and** Mining—Improvements—Recovery.—Where the lessee of a mine contracts to place certain improvements thereon, and before the expiration of his lease is deprived of the possession of the mine, he cannot set off the value of the improvements against a claim by the lessor for money loaned him to make the improvements. The measure of his damages is the value of the use of the improvements during the remainder of the lease, and where there is neither pleading nor proof that the mine could have been operated at a profit, no recovery can be had on this account.

2. **Interest.**—Where an indebtedness is payable in monthly installments, and on default of such payments the whole debt becomes due, it is not error to give interest on the principal sum from such time.

3. **Set-off—Exemption.**—A debtor's exemptions cannot be defeated by a set-off or counter-claim.

H. C. CLAY for appellant.

SAM C. HARDIN for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

This is the second appeal of this case. The opinion on the former appeal may be found in 148 Ky., 113, under the title of Phoenix-Jellico Coal Co. v. Grant.

The facts out of which the litigation grows are as follows:

On August 1, 1905, plaintiff, W. R. Grant, leased from the defendant, Phoenix-Jellico Coal Company, certain coal property in Laurel County, Kentucky. By the terms of the lease, which was to run for four years and nine months, plaintiff obligated himself to build a tipple, and make such other improvements as were necessary to the operation of the mine. Plaintiff took charge of the mine and operated it for about ten months. At that time he was indebted to the coal company in the sum of $2,239.22. On June 1, 1906, he and the company entered into a new contract, by the terms of which he acknowledged his indebtedness to the company and agreed to pay it $100 a month until the debt was satisfied. In case plaintiff failed to make these

monthly payments, then the contract provided that he was to turn over the lease, mules, harness, and other property to the company in satisfaction of his indebtedness, and thereupon the lease was to be terminated. Plaintiff failed to meet his monthly obligations, and the company took possession of the mines. Thereupon plaintiff instituted a suit in which he asked that the contract of June, 1906, be reformed and sought to recover damages because he had been deprived of the possession of the mine. The chancellor found that the contract had been obtained by fraud, and adjudged its reformation, holding that certain personal property which belonged to plaintiff, and which had been taken possession of by the company, was not the property of the company, and that the company merely had a lien on the property to secure the payment of plaintiff's indebtedness to it, and that this lien could not be enforced until the expiration of the lease. The chancellor further adjudged plaintiff damages in the sum of one cent. From that judgment plaintiff appealed, and the company prosecuted a cross appeal. The judgment both on the original and cross appeal was affirmed. Phoenix-Jellico Coal Co. v. Grant, 136 Ky., 751.

Thereafter plaintiff, Grant, instituted this action against the coal company to recover the particular items of personal property which he claimed had been wrongfully and unlawfully withheld from him, and which were adjudged to him in the case of Phoenix-Jellico Coal Co. v. Grant, above referred to. The reasonable value of each particular item of personal property was set out. He sought to recover the property, or if not to be had, its value, and in addition thereto $100 damages for its detention. The coal company denied that it had wrongfully or unlawfully withheld said property, and pleaded plaintiff's indebtedness to it by way of set-off and counterclaim. During the pendency of the action the coal company asked that the case be consolidated with other suits and transferred to equity. This motion was overruled. The case was submitted to the jury, which returned a verdict in favor of plaintiff for the property sued for, or if not to be had, its value, and $100 damages for its detention. The jury also found against the coal company on its set-off and counterclaim. From that judgment the coal company appealed. This court held that there was no evidence of a substantial nature upon which the finding of the jury as to the

counterclaim could be based. The judgment was reversed, and the cause remanded with directions to transfer to equity and to give to each of the parties the right to file such additional pleadings as they desired. Phoenix-Jellico Coal Co. v. Grant, 148 Ky., 113. On the return of the case plaintiff filed an amended reply, set-off and counterclaim, pleading in substance that the money which he borrowed from defendant was used by him in improving the coal mine, and asking that he be permitted to set off against defendant's counterclaim the money expended in making these improvements to the extent that they enhanced the vendible value of the mine. To this amended pleading a demurrer was sustained, and plaintiff was allowed nothing on account thereof. The chancellor gave judgment in favor of the plaintiff for the value of the personal property sued for, amounting to $520, and $100 damages for its detention. He also gave judgment in favor of defendant on its set-off and counterclaim for the sum of $2,239.22, with interest from October 6, 1906, until paid, subject to certain credits which it is not necessary to mention. He further adjudged that the judgment in favor of plaintiff for $620 be credited upon defendant's set-off and counterclaim as of date October 6, 1906.

It is insisted that the judgment is erroneous in not allowing plaintiff any credit for the improvements placed on the property in question. In this connection it is argued that as the money advanced by defendant was used by plaintiff in making the improvements, and as defendant terminated the lease and took possession of the mine, it is inequitable to give defendant the benefit of these improvements, and at the same time charge plaintiff with the amount expended in making them. Passing the question of plaintiff's right to plead such a defense to defendant's set-off and counterclaim, our view of the case is this: Had plaintiff continued to work the mine until the expiration of the lease, the improvements would have gone to the defendant. The fact that the money used in making the improvements was borrowed from the defendant instead of from an outsider in nowise alters the case. All that the plaintiff has been deprived of is the use of the improvements from the time that defendant took possession of the mine until the expiration of the lease. The measure of his damages, therefore, is the value of the use of the improvements during that time. That value depends upon

whether or not the mines could have been operated at a profit, and upon this question there is neither pleading nor proof.

· Plaintiff, by reply, pleaded in apt terms that he was a housekeeper with a faimly, a resident in this Commonwealth, and that the property sued for by him was exempt as against defendant's set-off. Instead of allowing the exemption, the chancellor set off the judgments one against the other. In is insisted that this was error to the extent of the $100 damages recovered by plaintiff, inasmuch as that sum, together with plaintiff's other property, did not equal the exemptions allowed him by law. The exemption laws are liberally construed, and for that reason a majority of the courts hold that a debtor's right to his exemptions cannot be defeated by a set-off or counterclaim. The primary object of such statutes is not merely to protect the exempt property of the debtor from seizure by means of the processes technically known as attachment and execution, but to preserve it for the benefit of his family against any appropriation for the payment of his debts not authorized by law, to which he does not consent. 18 Cyc., 1463; Smith v. Sills, 126 Ind., 205; Bowen v. Holden, 95 Mo. App., 1, 75 S. W., 686; Bradley v. Earl, 132 N. W. (N. D.), 660; Millington v. Laurer, 89 Iowa, 322, 5 N. W., 533, 48 Am. St. Rep., 385. The case is not one of mutual credits or of mutual trust, or where the law presumes that the defendant was induced to trust the plaintiff by having a pledge or credit in his hands. While plaintiff had given defendant a lien on the personal property sued for, and could not, therefore, plead his exemptions against that lien, the claim for damages is not covered by the lien. Defendant took the personal property without right, and deprived plaintiff of its use and enjoyment. The court fixed the damages for its detention at $100. This being a valid subsisting· claim against which there was no defense, manifestly if no set-off had been pleaded, no other creditor could have . attached this sum after judgment in the hands of defendant. To permit defendant to set off its lien claim against this sum would deprive plaintiff of property which is exempt under the exemption law, and would work a manifest subversion of that law. We, therefore, conclude that the chancellor erred in so holding.

The court did not err in allowing defendant interest on his set-off from October 6, 1906. Plaintiff had de-

faulted in his monthly payments, and the whole sum, therefore, became due.

Judgment reversed and cause remanded for proceedings consistent with this opinion.